UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JERRY SWENEY,

                Petitioner,                **DECISION AND ORDER**

    -vs-                                   **No. 09-CV-0119(VEB)**

DEPARTMENT OF CORRECTIONS
(Groveland Corr. Fac.),

                Respondent.
_____

## I.      Introduction

Petitioner *pro se* Jerry Sweney ("Sweney" or "Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that he is being unconstitutionally detained in state custody as the result of a judgment of conviction entered against him in New York State Supreme Court (Erie County), following a jury trial, on charges of robbery in the third degree (New York Penal Law ("P.L.") § 160.05) and resisting arrest (P.L. § 205.30). The gravamen of the charges was that Sweney stole certain items from a Tops Grocery Store and then resisted arrest. Sweney was sentenced on June 29, 2006, to an indeterminate term of imprisonment of 3½ to 7 years for the robbery conviction and a one-year concurrent term for the resisting arrest conviction. His conviction was unanimously affirmed on October 3, 2008, and leave to appeal was denied on December 16, 2008. *People v. Sweney*, 55 A.D.3d 1350 (App. Div. 4th Dept.) 11 N.Y.3d 901 (N.Y. 2008).

In his petition, Sweney. Respondent has asserted the defense of procedural default with regard to certain of Sweney's claims and argues that none of the claims warrant habeas relief.

Sweney filed a traverse in reply to respondent's opposition.

The parties have consented to final disposition of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).

For the reasons discussed below, the petition is dismissed.

## II.      Standard of Review Under 28 U.S.C. § 2254, as Amended by AEDPA

When a petitioner "in custody pursuant to the judgment of a State court" seeks habeas review of "any claim that was adjudicated on the merits in State court," a habeas writ may issue only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2). A state court decision is "contrary to" federal law as determined by the Supreme Court if either (a) "the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law," or (b) "the state court considers facts that are materially indistinguishable from a relevant Supreme Court case and arrives at an opposite result." *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).  An "unreasonable application" of clearly established federal law occurs if (a) "'the state court identifies the correct governing legal rules from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case,'" or (b) the "state court invokes a Supreme Court case and unreasonably extends its legal principle to a new context where it should not apply, or fails to extend it where it should apply." *Williams*, 529 U.S. at 407.

Factual findings by a state court are entitled to a presumption of correctness, 28 U.S.C. §

2254(e)(1), which the habeas applicant bears the burden of overcoming by clear and convincing evidence, *id.*

## III.   The Adequate and Independent State Ground Doctrine and Procedural Default

The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (citations and internal quotations omitted). Even where the state court also considers a petitioner's arguments on the merits, that is of no moment because "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990). Thus, "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent doctrine "curtails reconsideration of the federal issue on federal habeas." *Harris*, 489 U.S. at 264 n. 10; *accord Coleman v. Thompson*, 501 U.S. 722, 735, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir.2000); *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir.1994), *cert. denied*, 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995).

To show a "fundamental miscarriage of justice" requires a demonstration of "actual innocence." *See*, *e.g.*, *Calderon v. Thompson*, 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d

728 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) ("The miscarriage of justice exception is concerned with actual as compared to legal innocence."). The Supreme Court has emphasized that the exception has a "narrow scope," *Sawyer*, 505 U.S. at 339.   "To be credible," a claim of actual innocence must be based on reliable evidence not presented at trial[,]" *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *accord Calderon*, 505 U.S. at 339.

IV.     **Analysis of the Petition**

   A.     **Insufficiency of the Evidence as to the "Use of Force" Element of Third Degree Robbery**

On direct appeal, Sweney argued that the evidence was legally insufficient with regard to his use of force in the taking of the property, thereby invalidating the third degree robbery conviction.   The Appellate Division held that "[i]nsofar as defendant contends that the evidence is legally insufficient to support the robbery conviction because the taking of property was completed before any use of force or threats, we conclude that he failed to preserve that contention for our review[.]" *People v. Sweney*, 55 A.D.3d at 1351 (citing *People v. Gray*, 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 652 N.E.2d 919 (N.Y. 1995)). As Respondent argues, Sweney's insufficiency-of-the-evidence claim is procedurally barred due to the Appellate Division's reliance upon *People v. Gray*, 86 N.Y.2d at 19, 629 N.Y.S.2d 173, 652 N.E.2d 919, as an "adequate and independent state ground," to dismiss the claim as unpreserved. *See Harris v. Reed*, 489 U.S. 255, 260-61, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (Federal habeas corpus review of a state conviction is prohibited if a state court judgment is based on an "adequate and independent state ground," such when the state court "explicitly invokes a state

procedural bar rule as a separate basis for decision.").

   In New York, an objection to the legal sufficiency of the evidence takes the form of a

motion to dismiss. *People v. Thomas*, 36 N.Y.2d 514, 369 N.Y.S.2d 645, 330 N.E.2d 609, 610

(N.Y.1975). The motion must be made in order for an insufficient evidence claim to be preserved

for review, *People v. Bynum*, 70 N.Y.2d 858, 523 N.Y.S.2d 492, 518 N.E.2d 4 (N.Y.1987), and

the motion must be made "at the close of the People's case." *Thomas,* 36 N.Y.2d 514, 369

N.Y.S.2d 645, 330 N.E.2d 609. Moreover, New York courts have consistently held that a general

motion to dismiss is not sufficient to preserve the contention that the evidence at trial was

insufficient to establish a specific element of the crime charged. *See People v. Gray*, 86 N.Y.2d

at 20-22. The Second Circuit recognizes New York's contemporaneous objection rule as an

independent and adequate state procedural rule barring habeas review. *E.g., Richardson v.

Greene*, 497 F.3d 212, 218 (2d Cir.2007).

   "New York's preservation rule, codified at N.Y.Crim. P. Law § 470.05(2), 'require[s], at

the very least, that any matter which a party wishes the appellate court to decide have been

brought to the attention of the trial court at a time and in a way that gave the latter the

opportunity to remedy the problem and thereby avert reversible error.'" *Garcia v. Lewis*, 188

F.3d 71, 78 (2d Cir.1999) (quoting *People v. Luperon*, 85 N.Y.2d 71, 78, 623 N.Y.S.2d 735, 647

N.E.2d 1243 (N.Y.1995)); *accord, e.g., Garvey v. Duncan*, 485 F.3d 709, 714-15 (2d Cir.2007).

"A general objection is not sufficient to preserve an issue since such would not alert the court to

defendant's position. Instead New York's highest courts uniformly instruct that to preserve a

particular issue for appeal, defendant must specifically focus on the alleged error." *Richardson*,

497 F.3d at 218 (quoting *Garvey,* 485 F.3d at 714-15) (citation omitted; emphasis added in

*Richardson*). Under the circumstances, I find that the Appellate Division relied upon a state ground that was both independent of the federal question and adequate to support the judgment when it rejected of Sweney's insufficiency-of-the-evidence claim based upon the lack of a specific objection. *See id.*

Sweney has not made the requisite showing of either "cause and prejudice" or a "fundamental miscarriage of justice." Accordingly, the insufficiency-of-the-evidence claim is subject to an unexcused procedural default and habeas review is precluded.

**B.    Insufficiency of the Evidence on the "Taking from an Owner" Element of Third Degree Robbery**

Sweney argues that the evidence was legally insufficient to support the robbery conviction on the ground that the store manager did not have a right of possession to the store merchandise superior to that of himself. The Appellate Division summarily held that this contention lacked merit. *People v. Sweney*, 55 A.D.3d at 1351 (citing *People v. Brown*, 108 A.D.2d 922, 923 ("Finally, we find no merit to defendant's contention that there was a fatal variance between the allegations in the indictment and the proof offered at trial because the employee of the store was named as the 'owner' of the stolen property. It is clear that the named employee had a right of possession to the stolen money superior to that of defendant or his coperpetrator who had no right of possession whatsoever[.]") (citations omitted).

Steven Gecewicz testified that on the evening of January 9, 2006, he was the night manager at the Tops Market where the theft occurred. His duties included putting up stock, ordering and taking care of problems as the supervisory person in the store. Around 3:00 a.m. he saw a man enter the store and put two pork loins in his shopping cart. The man subsequently hid

behind a display and took 4 or 5 razor blades off the shelf and put them in his pocket. As Gecewicz was telling the cashier to call the police, and saw the man putting more razor blades in his jacket. The man then walked through the register area without paying for any of the items. Gecewicz stopped the man in the vestibule and asked him where the meat and razor blades were. The man replied that he had neither those nor any other items on him, and tried to get by Gecewicz. Gecewicz stated he knew he (Sweney) had them, and instructed him to wait because the police were on their way.

When the man said he had nothing, Gecewicz put out his hand to the chest and asked something to the effect of "what are those?" The man replied that he had a body cast on. The man told Gecewicz to get out of his way or else he would "shoot his ass." The man then pushed Gecewicz's arm down, which was in front of the man's chest, and he walked away. (T.227-230, 232-236; numbers in parentheses preceded by "T." refer to pages of the trial transcript).

Gecewicz observed the man walk at a faster pace through the parking lot. Gecewicz followed from a distance. When the police arrived, Gecewicz pointed the man out. The police recovered meat and razor blades from the man Gecewicz identified. The man had not been given permission by any store representatives to take the items without paying for them. (T.237, 241-243, 248). Gecewicz admitted that he could not identify, in court, the person whom he had caught shoplifting. (T.229).

Officer John McGarvey of the Town of Amherst Police Department arrived at the scene and approached Sweney, whom the store manager had identified as the thief. Sweney, by this point, was discarding the stolen items, which caused Officer McGarvey to yell out, "police, get down." Sweney placed his arms underneath his chest and went down on his knees. The officer

informed Sweney that he was under arrest and instructed him to put his hands behind his back.

Sweney refused to do so. A struggle ensued between Officer McGarvey and Sweney before

Sweney was able to be handcuffed. The police found razor blades and other items from the

grocery store on his person. (T.280-283, 286-290, 301, 313-314, 322). A second officer

corroborated this testimony. (T.332-335).

Robbery requires the forcible taking of property from an owner. N.Y. Penal Law §§

160.00, 155.05(1). An "owner" is defined as any person who has a right to possession superior to

that of the taker, obtainer or withholder. N.Y. PENAL LAW § 155.00(5). The jury was informed

that robbery was forcible stealing, and that "a person steals property when with intent to deprive

another of property or to appropriate the property to himself or herself, such person wrongfully

takes, obtains or withholds property from the owner of the property." (T.537). The court

further informed the jury that "a person forcibly steals property and commits a larceny when in

the course of committing a larceny such person uses or threatens the immediate use of physical

force upon such other person for the purpose of compelling the owner of such property to deliver

up the property or for the purpose of preventing or overcoming resistance to the taking of the

property (T.537).

Petitioner took the merchandise from the store without permission and when the manager

attempted to apprehend him, he forcibly moved the manager's hand away in a clear attempt to

prevent the manager from interfering with his (Petitioner's) retention of the stolen property.

Petitioner also threatened to "shoot [the manager's] ass" if he did not get out of Petitioner's way.

There was an ample factual basis to support the robbery charge. *People v. Benoit*, 39 A.D.3d 336

(App. Div. 1st Dept. 2007) ("The evidence established that defendants acted in concert in

shoplifting merchandise, and that as they left the store with the stolen goods, Benoit brandished an object and threatened a store security guard, thereby escalating the crime to a robbery[.]"); *People v. Lawson,* 184 A.D.2d 588 (App. Div. 2d Dept. 1992) (evidence was sufficient to show that defendant used physical force during course of larceny when he swung grocery bag that weighed 15 pounds at supermarket's security guard's head for purpose of preventing or overcoming resistance to taking or retention of property and, therefore, there was sufficient evidence of physical force to support second-degree robbery conviction).

Petitioner cited *People v. Wilson*, 93 N.Y.2d 222 (1999), for the proposition that the store manager in the instant case had no greater right to possession of the merchandise in question than he did and therefore there was no taking from an "owner." Robbery and larceny require a taking of property "from an owner thereof" (see, Penal Law §§ 155.05, 160.00). The Penal Law defines ownership broadly, to include not only the true owner of a chattel, but "any person who has a right to possession thereof superior to that of the taker" (Penal Law § 155.00 [5]). The statutory definition codifies the common-law rule, long recognized in this State, that ownership is not limited to the title owner of the property but it is enough instead that the person have a right to possession of the property superior to that of the thief. *People v. Wilson*, 93 N.Y.2d at 225 (citations omitted).

In *Wilson*, the defendant and a cohort were apprehended by a mall security guard who believed that they had stolen a box containing 12 pairs of boots from a delivery truck passing by the mall where the security guard worked. The indictment listed the security guard as the "owner" of the boots for purposes of the robbery and larceny charges. The New York Court of Appeals held that "[n]either the fact that the boots were carried onto mall grounds, nor that the

guard was charged with preserving mall property, gave him any sort of possessory right in the boots while they were in the possession of defendant and his partner." 93 N.Y.2d at 228.

*Wilson* is distinguishable from the instant case and does not call into question the verdict against Sweney.  Here, the store manager plainly had a relationship with Tops Market, the title owner of the merchandise. He was employed by the store and had general supervisory responsibilities over all aspects of the store and the merchandise located therein. Petitioner's claim that both the manager and any customer had equal rights to handle the merchandise ignores this critical relationship. Acceptance of Petitioner's reasoning leads to the incongruous conclusion that there is no one from Tops Market, even the company president, who would have a superior right of possession over the merchandise as compared to a customer. This proposition does not enjoy support in New York's case law.

To the extent Sweney claims that his conviction is against the weight of the credible evidence, such a claim is not cognizable on federal habeas review. A habeas petitioner's contention that a witness' testimony was unworthy of belief is not reviewable in habeas proceedings since credibility determinations are the province of the jury.  *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; stating that it must defer to the jury's assessments of both of these issues).

### C.    Insufficiency of the Evidence as to the Resisting Arrest Charge

Sweney also argues that the evidence was legally sufficient to support the conviction of resisting arrest because he did not use violence. On direct appeal, the Appellate Division disagreed, holding that "the jury could rationally conclude from the testimony at trial that

defendant intentionally attempted to prevent the police officers from arresting him[.]" *People v. Sweney*, 55 A.D.3d at 1351 (citation omitted).

New York Penal Law § 205.30, the statute under which Sweney was convicted, provides that "[a] person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person." N.Y. PENAL LAW § 205.30.  Under New York law, it is not necessary that a defendant use force or violence in obstructing a police officer; rather , it is enough that he engage in some conduct with the intent of preventing the officer from making an authorized arrest of himself or another person. *See, e.g., People v. Stevenson*, 31 N.Y.2d 108, 113 (N.Y. 1972) (" The defendant's own testimony establishes that he refused to submit to the authority of the arresting officer after he was advised of his arrest. The conduct of the defendant, whether verbal or physical, clearly established the requisite intent–i.e., that defendant would not submit to the arrest–for resisting arrest prior to the arrival of the other policemen."); *People v. Clark*, 241 A.D.2d 710, 660 N.Y.S.2d 200 (App. Div. 3d Dept. 1997) ("The undisputed proof at trial demonstrated that when the police officers found defendant crawling among the desks in the school's chemistry lab, he disregarded their repeated orders to identify and surrender himself, he attempted to run from the room when the officers approached, and once captured he physically struggled to avoid being handcuffed. His verbal and physical refusal to submit to the authority of the arresting officers provided a legally sufficient basis from which County Court could infer that defendant knew that he was being arrested and that he possessed the requisite intent for resisting such arrest[.]"), *lv. denied* 90 N.Y.2d 1010, 666 N.Y.S.2d 105, 688 N.E.2d 1388).

Here, Sweney's conduct of moving his hands away, under his body, so that the police

-11-

officer could not handcuff him, required the officer to struggle to place Sweney's hands behind his back in a position to be handcuffed. It was not unreasonable for the jury to conclude this was conduct that not only "intentionally prevent[ed] . . . a police officer . . . from effecting an authorized arrest of himself . . . ." N.Y. PENAL LAW § 205.30, but endangered the officer by physically struggling with him.  Drawing all reasonable inferences in favor of the prosecution and deferring to the jury's assessments of witness credibility, as a reviewing court is required to do, I conclude that Sweney's resisting-arrest conviction satisfied due process standards.

### D.    Prosecutorial Misconduct

The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, not the court's broad exercise of supervisory power. In reviewing claims of prosecutorial misconduct in summation, the court must distinguish between ordinary trial error and the sort of egregious misconduct amounting to a denial of constitutional due process. Petitioner must establish that the prosecutor's remarks were so prejudicial that they rendered the trial "fundamentally unfair." *Floyd v Meachum*, 907 F.2d 347, 353 (2d Cir. 1990). It must be shown that the prosecutor's remarks caused "substantial prejudice" to petitioner; in other words, that they had "a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v Scully*, 41 F.3d 818, 824 (2d Cir. 1994), *cert. denied*, 516 U.S. 1152 (1996); *see also Gonzalez v Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991). "In deciding whether a defendant has suffered actual prejudice as a result of the prosecutorial misconduct, [the Second Circuit] [has] considered 'the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements.'" *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998) (quoting *Floyd*, 907 F.2d at 355 (quoting

*United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir.1981) (*per curiam*)) (internal quotation marks omitted); *accord United States v. Parker*, 903 F.2d 91, 98 (2d Cir.1990); *Bradley v Meachum*, 918 F.2d 338, 343 (2d Cir. 1990), *cert. denied*, 501 U.S. 1221 (1991).

Sweney contends that the prosecutor's comments and questions during jury selection concerning the jury's attitudes regarding the absence or presence of forensic evidence were improper. The prosecutor commented,

> There are a number of different types of evidence that can be presented against a defendant in a criminal trial. For example, eyewitness testimony, expert testimony, physical evidence, forensic evidence, and although the People have an obligation to prove our case beyond a reasonable doubt, prove the defendant's guilt beyond a reasonable doubt, we don't have any obligation under the law to use any certain combination of any sort of one of those types of evidence. So I want to talk about CSI [a television show about crime scene investigation].

(T.88-90). Trial counsel immediately objected and argument was held off the record. (T.89-92). The trial court overruled counsel's objection and the prosecutor proceeded to speak to the jurors about the television show, CSI, and explained that the People would not be presenting any forensic evidence against Petitioner. (T.92). The prosecutor asked the prospective jurors if they would require forensic evidence or fingerprint evidence to convict Petitioner, which prompted another objection from defense counsel. (T.93).

Trial counsel conceded that the prosecutor was permitted to question the prospective jurors about their qualifications, *see* C.P.L. § 270.15(1)(c), but argued that each juror's expectations or attitudes about certain types of evidence are irrelevant as each juror brings his or her own individual experience to the case. Trial counsel argued that the entire panel of prospective jurors was tainted by the prosecutor's questions and comments about forensic evidence and requested that they be dismissed. (T.97-99). The trial court declined that request,

but directed the prosecutor to ask questions rather than make speeches to the jury pool. (T.100).

On direct appeal, Petitioner's appellate counsel repeated the arguments made by trial counsel (that the questioning went beyond the proper scope of C.P.L. § 270.15(c) and was irrelevant to the individual's qualifications as jurors) and also implied that these allegations raised a "fair cross-section" claim under the Sixth Amendment, arguing that the prosecutor was able to "hand-pick" jurors who placed a higher premium on eyewitness evidence rather than forensic evidence. The Appellate Division specifically found that the challenged comments and questions did not constitute prosecutorial misconduct because they were "relevant and material to the inquiry at hand[.]" *People v. Sweney*, 55 A.D.3d at 1351 (citing *People v. Boulware*, 29 N.Y.2d 135, 140, 324 N.Y.S.2d 30, 272 N.E.2d 538, *rearg. denied* 29 N.Y.2d 670, 324 N.Y.S.2d 959, 274 N.E.2d 447, 29 N.Y.2d 749, 326 N.Y.S.2d 1027, 276 N.E.2d 238, *cert. denied* 405 U.S. 995, 92 S.Ct. 1269, 31 L.Ed.2d 463).

In this Court's view, Sweney has not demonstrated that the prosecutor's questions and comments during *voir dire* were erroneous as a matter of New York state law. Some researchers have recently noted that the plethora of television programs emphasizing forensic evidence such as CSI, NCIS, Law and Order, and Cold Case, have engendered an unrealistically high expectation by the public that forensic evidence is required for proof of guilt, thereby creating a heightened burden for the prosecution. *E.g.***,** Michael Asimov, Lawyers in Your Living Room: Law on Television (ABA Publisher) (2009) (reporting results from a study involving the opinions of mock jurors in Los Angeles, California about the importance of DNA evidence; stating that 88 percent of the Los Angeles mock jurors surveyed thought that DNA evidence should be analyzed in all criminal cases and concluding that the "high percentage of belief in

-14-

DNA evidence correlates to the CSI effect").  More important for purposes of this habeas

petition, Sweney has not shown an infringement of any of his federal constitutional rights

resulting from the prosecutor's questions about the jurors' attitudes towards forensic evidence.

The Appellate Division did not unreasonably apply any clearly established federal law when it

concluded that the challenged actions by the prosecutor during *voir dire* did not constitute

misconduct.

Sweney further argues that the prosecutor engaged in misconduct on summation by

mischaracterizing the identification testimony. The challenged comments appeared in the

following section of the summation:

> He [store manager Gecewicz] is the victim in this case. He is the eyewitness. He
> told you what happened. *He told you that he saw the defendant with two pieces of*
> *meat in his cart. He told you that he saw the defendant with his own two eyes*
> *putting razor blades into the jacket and he told you that he observed the*
> *[surveillance camera] tape and that it didn't show the part where the defendant*
> *was putting razor blades into his jacket.*
> . . .
> When it comes down to it do any of you really need a videotape showing that the
> defendant Mr. Sweney went into Tops Markets . . . on that night . . . ? This isn't a
> mistaken identity case. *You know from Steven Gecewicz's testimony*, Officer
> McGarvey's testimony *that this is the person who went into Tops Markets on that*
> *night.* Is this the person who–
>
>> Mr. Dolgoff [Defense Counsel]: Your Honor, I've got to object,
>> that misstates the evidence, that totally misstates the evidence. Mr.
>> Gecewicz stays he couldn't ID this person. The tenor right now is
>> that he did ID him.
>>
>> Ms. O'Donnell [Prosecutor]: Judge, I am allowed to make
>> arguments during my summation. I would appreciate it if Mr.
>> Dolgoff refrained from making frivolous objections as I did
>> during his closing argument and allow me to make–
>>
>> Mr. Dolgoff: These are not frivolous objections. These are
>> comments on the fact that she is misstating the evidence which

you cannot do. You can comment on the evidence. The evidence
is that he couldn't identify him, not that he did identify them [sic].

Ms. O'Donnell: Judge, that's not what I said and I'm making
argument which is perfectly proper to closing arguments.

The Court: The objection is overruled. And now I as I said before
and I'll say this again in my charge which I make rulings on
objections you are not to consider that as far as your role as far as
guilty or not guilty.

(T.497-98) (emphases supplied). As noted above in the section summarizing the testimony,

Gecewicz, when asked on direct examination whether he could see the person whom he reported

to the police in court that day, replied, "I can't really say, you know, it was a year ago, I don't

recall right now."  Petitioner's argument is that a juror, hearing the statement that Gecewicz "saw

*the defendant*" with two cuts of meat in his shopping cart, fairly could have interpreted it as

meaning that is that he "saw *Sweney*" with the stolen items in his cart. Arguably, what the

prosecutor should have done was to refer to Gecewicz having seen "the perpetrator" or to have

used a similar construction.

On direct appeal, the Appellate Division held that "[c]ontrary to the further contention of

defendant, the prosecutor did not engage in prosecutorial misconduct on summation by

mischaracterizing the identification testimony[.]" *People v. Sweney*, 55 A.D.3d at 1351. The

Appellate Division went on to say that and, "[i]n any event, even assuming, *arguendo*, that the

prosecutor engaged in misconduct during [her] summation, we conclude that such misconduct

was not 'so egregious as to deprive defendant of a fair trial[.]'" *People v. Sweney*, 55 A.D.3d at

1351 (quotation omitted).

It is improper as a matter of both State and Federal law for a prosecutor to impugn

-16-

defense counsel's integrity, denigrate or ridicule the defense theory, or make *ad hominem* attacks

on defense counsel. *E.g.*, *People v. LaPorte*, 306 A.D.2d 93, 95 (App. Div. 1st Dept. 2003)

(reversing conviction where prosecutor's remarks during summation were not fair response to

defense counsel's summation and thus denied defendant a fair trial, because evidence against

defendant was not overwhelming; prosecutor impugned defense counsel's integrity, ridiculed the

defense theory as mumbo jumbo, and warned the jurors several times in so many words that

defense counsel was manipulating them and trying to prevent them from using their common

sense") (citation omitted); *United States v. Biasucci*, 786 F.2d 504, 513-14 & n.9 (2d Cir. 1986)

(characterizing as "clearly . . . inappropriate" the prosecutor's suggestion to the jury that the

government could have prolonged the trial for three months and his "needless and unwarranted

*ad hominem* attacks against defense counsel[,] . . . [f]or instance, the prosecutor addressed

defense counsel at one point as 'you sleaze,' at another as 'you hypocritical son—,' as being 'so

unlearned in the law,' and on several occasions the prosecutor objected to questions by the

defense as 'nonsense'") (internal citations to the record omitted). Furthermore, "[i]t is clear, of

course, that it is improper for a prosecutor to mischaracterize the evidence or refer in summation

to facts not in evidence[,]" *United States v. Rosa*, 17 F.3d 1531, 1548-49 (2d Cir.1994).

"The fundamental question in such circumstances is whether the prosecutor's misconduct

caused substantial prejudice to the defendants, thereby depriving them of their rights to a fair

trial." *Biasucci*, 786 F.2d at 514 (citations omitted). Federal courts have emphasized that

"criminal convictions are not to be lightly overturned on the basis of a prosecutor's inappropriate

comments standing alone in an otherwise fair proceeding." *Id.* (citing *United States v. Young*,

470 U.S. 1, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985) (context in which remarks were made

must be examined to determine the probable effect on the jury's ability to judge the evidence fairly); *United States v. Wilkinson*, 754 F.2d 1427, 1435 (2d Cir.), *cert. denied*, 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985)).

The prosecutor's gratuitous request that counsel refrain from "frivolous" objections was better left unsaid but, I conclude, it was not the type of egregious misconduct that denies a defendant of a fair trial.  With regard to the claimed mischaracterization of the identification evidence, even if it did amount to a misstatement of testimony, it was not reasonably likely to create undue prejudice Here, there was more than ample evidence adduced by the prosecution to compellingly establish Sweney's guilt.  Thus, "based on the other evidence against [Petitioner]," I cannot find that "any adverse inference improperly drawn by the jury would [ ] have tilted the scales from not guilty to guilty." *United States v. Saa*, 859 F.2d 1067, 1077 (2d Cir.1988). In other words, even absent the prosecutor's improper remarks, Sweney certainly would have been convicted; the alleged misconduct did not have a substantial and injurious effect on the jury's ability to decide the case based solely upon the facts in evidence.

Under AEDPA's deferential standard of review, the relevant question is not whether the state court's holding was merely incorrect but rather was objectively unreasonable in light of clearly established Supreme Court precedent. Here the Appellate Division concluded that even if there was misconduct, it was not so egregious as to have denied Sweney a fair trial. Bearing in mind that "it is not enough that the prosecutors' remarks were undesirable or even universally condemned," *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1970)), I find that the Appellate Division's rejection of Sweney's prosecutorial misconduct claim did not

amount to an unreasonable application of clearly established Supreme Court law.

### E.    Prejudicial Trial Continuance Based Upon *Rosario* Violation

The trial had to be continued six days due to petitioner's desire to cross-examine a prosecution witness using a document which was not provided to the defense in violation of the prosecutor's statutory duty under *People v. Rosario*. Once the document was turned over, Petitioner's trial counsel was able to throughly cross-examine the witness.  Petitioner argued that the delay in the proceedings prejudiced him because the jury would have been annoyed and might have forgotten important proof, and because defense counsel lost the opportunity to "surprise" the prosecution witness during cross-examination.

On direct appeal, the Appellate Division agreed with Sweney that "the People violated the provisions of CPL 240.20 by failing to disclose a police report until the third day of trial, '[t]he People's delay in complying with the provisions of [that statute] constitutes reversible error . . . only when the delay substantially prejudices defendant,' and here defendant failed to establish that he was 'substantially prejudice[d]' by the . . . delay[.]" *People v. Sweney*, 55 A.D.3d at 1352 (internal quotations omitted; ellipses in original). As Respondent points out, the delay was  relatively brief, there was no proof the jury was upset, and if  there was anything the jury did not recall, the jury could request a readback of the testimony. With respect to surprising the witness, the document in question was of limited utility to the defense. Finally, the court gave appropriate instructions to the jury concerning the delay. (378-379, 544).

In any event, Sweney's *Rosario*[1] claim does not present an error of constitutional magnitude and therefore is not cognizable on habeas review. *Hill v. Senkowski*,  409 F. Supp.2d

---

[1]        *People v. Rosario*, 9 N.Y.2d 286, 290 (N.Y. 1961).

222, 232 (W.D.N.Y. 2006) (Bianchini, M.J.) (citing *Lyon v. Senkowski*, 109 F.Supp.2d 125, 139

(W.D.N.Y.2000) (Larimer, D.J.); *Sutherland v. Walker*, No. 97 CIV. 4432 WHP RLE, 1999 WL

1140870, at *9 (S.D.N.Y. Dec.10, 1999). Unlike a *Brady*[2] claim, a *Rosario* claim is solely a New

York state law right. *Lyon*, 109 F. Supp.2d at 139; *see also Copes v. Schriver*, 1997 WL 659096,

at *4 (S.D.N.Y. Oct.22, 1997) ( Rosario violation does not establish a constitutional violation).

Rosario expanded the requirements later defined in Brady and its progeny, holding that the

prosecution must disclose any prior statement of its witness, regardless of whether it is favorable

to the accused. *Lyon*, 109 F. Supp.2d at 139. To the extent that it exceeds federal constitutional

requirements, *Rosario* defines state law, and the prosecutor's failure to turn over Rosario material

is not cognizable on federal habeas review. *Id.*; *see also Green v. Artuz,* 990 F.Supp. 267, 274

(S.D.N.Y.1998) (citing *United States ex. rel. Butler v. Schubin,* 376 F.Supp. 1241, 1247

(S.D.N.Y.1974)).

## F.      Denial of a "Missing Witness" Jury Instruction

Petitioner claims that the trial court erred in denying his request for a missing witness

charge with regard to another employee, the night manager's assistant.  At trial, the night

manager said that he had an assistant  with him outside and the assistant was with him at points

during the night. (T.257). On this basis defense counsel asked for a missing witness charge

because the assistant was not called by the People. The trial court declined to give the requested

instruction.

The prosecution argued that Petitioner had not made a *prima facie* showing of entitlement

---

[2]      *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

to a missing witness instruction because the store assistant was not knowledgeable about a

material issue in the case since there was no proof that the assistant observed the theft or the

night manager's encounter with Petitioner in the vestibule of the store. The fact that the assistant

was outside at some point does not establish that he was in a position to observe anything

that had to do with a material issue in the case. The prosecution argued that there was no

indication of "control" by the store assistant on the part of law enforcement or the district

attorney's office. Finally, the prosecution argued that even if the assistant had relevant testimony,

it nevertheless was cumulative to that already provided by other witnesses.  The Appellate

Division rejected the claim on the basis that the witness's testimony would have been cumulative

to other evidence.

It has been held that the burden on a collateral challenge to jury instructions is greater

than the showing required to establish plain error on direct appeal. *Henderson v Kibbe*, 431

U.S. 145, 155 (1977). A petitioner must show that the absence of the instruction, by itself, so

infected the entire trial that the resulting conviction violated due process. The burden of showing

a due process violation based of the failure to give a requested instruction is "especially heavy"

because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a

misstatement of the law." *Henderson*, 431 U.S. at 155.

"'Whether a missing witness charge should be given lies in the sound discretion of the

trial court.'" *Reid v. Senkowski*,  961 F.2d 374, 377 (2d Cir. 1992) (quoting *United States v.*

*Torres*, 845 F.2d 1165, 1170-71 (2d Cir. 1988) (other citations omitted)); *accord United States v*

*Torres*, 845 F.2d 1165, 1170-71 (2d Cir. 1988).  "The failure to give such a charge 'will rarely

support reversal or habeas relief since reviewing courts recognize the aura of  gamesmanship that

frequently accompanies requests for a missing witness charge as to which the trial judge will have a surer sense than any reviewing court'" *Manning v Walker*, No 99-CV-5747 (JG), 2001 WL 25637, at *9 (E.D.N.Y., Jan. 3, 2001); *see also Nunez v Phillips*, No. 05-CV-2692, 2008 WL 2651419 (E.D.N.Y. July 3, 2008).

To warrant a missing witness charge under New York law, the party requesting the charge must show that (1) the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case, (2) the witness would naturally be expected to provide non-cumulative testimony favorable to the party who has not called him, and (3) the witness is available to such party. *People v. Gonzalez*, 68 N.Y.2d 424, 427 (N.Y. 1986). Here, Sweney has not established that the store assistant had material, non-cumulative testimony to give. Therefore, I cannot find that the trial court abused its discretion in denying the charge. The Appellate Division appropriately deferred to the trial court as a matter of New York state law on assessing the propriety of issuing the requested charge.

There was no error of State law, much less an error Federal constitutional magnitude, and habeas relief is not warranted. *See*, *e.g.*, *Reid v. Senkowski*, 961 F.2d 374, 377 (2d Cir. 1992) (rejecting habeas claim, finding that state trial court did not abuse discretion in determining that missing witnesses were not sufficiently in control of the government to justify providing a missing witness charge requested by defendant, and thus denial of charge did not deprive defendant of right to fair trial, where the government introduced evidence of diligent efforts to locate the witnesses, and such efforts were unsuccessful).

    **G.**    **Erroneous Jury Charges**

        **1.**    **Jury Charge on Identification**

Petitioner contends that the trial court's instruction to the jury regarding the element of "identification" and how the proof regarding it should be evaluated was erroneous. (T.530-536). On direct appeal, the Appellate Division held as follows: "Defendant failed to preserve for our review his challenge to the jury charge on identification inasmuch as he failed to object to that charge, and we decline to exercise our power to review that challenge as a matter of discretion in the interest of justice." *People v. Sweney*, 55 A.D.3d at 1352 (internal citation omitted).

As Respondent argues, Petitioner's claim is procedurally defaulted. No contemporaneous objection to the jury charge was lodged, and the Appellate Division found that the issue was therefore unpreserved.  Under similar circumstances, the Second Circuit has previously held that New York State's contemporaneous objection requirement, N.Y.CRIM. PRO. LAW § 470.05(2), is an independent and adequate state ground that precludes habeas review. *See Garcia v. Lewis*, 188 F.3d 71, 82 (2d Cir.1999) ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules.") (citations omitted); *accord Franco v. Walsh*, 73 Fed. Appx. 517, 519, 2003 WL 22056234, at  **2 (2d Cir. Sept. 4, 2003) (same).

Where, as here, "'the state court explicitly invokes a state procedural bar rule as a separate basis for decision,'" federal habeas review is precluded unless the petitioner can show cause for the default and resulting prejudice, or that a fundamental miscarriage of justice will occur if the federal court does not consider the defaulted claim. *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir.1990) (quoting *Harris v. Reed*, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *see also Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). But Sweney here makes out no claim of cause, prejudice, or miscarriage of justice. As a result, I agree with Respondent that Sweney's claim is procedurally barred from habeas review

on the merits.

### 2.     The Trial Court's Statement Regarding the Videotape

Petitioner also contends that the trial court made an erroneous statement about the grocery store surveillance videotape, i.e., that the contents of the tape were unknown and that it would be inappropriate for the jury to speculate on its contents. On direct appeal, the Appellate Division held that the trial judge properly instructed the jury "it was not to engage in speculation with respect to evidence that was not presented at trial[.]"  *People v. Sweney*, 55 A.D.3d at 1352 (citing *People v. Gomez*, 226 A.D.2d 296, 642 N.Y.S.2d 215 (App. Div. 1st Dept. 1996) ("Further, the instruction to the jury not to speculate did not improperly convey that the jurors were to ignore the absence of proof of defendant's guilt, but simply that they were not to go beyond the evidence in theorizing about the reasons for any gaps therein (*People v. Duncan*, 221 A.D.2d 254, 635 N.Y.S.2d 462 ["[W]e would find that the trial court's instruction to the jury not to speculate did not improperly convey that they were to ignore the absence of proof of defendant's fingerprints on the drug vials, buy money in his possession, and other purported gaps in the People's case, but simply that they were not to go beyond the evidence in theorizing about the reasons for the gaps[.]")].")

The adequacy of a court's instructions to a jury is normally a matter of state law. *See Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). Since habeas relief requires the petitioner to predicate his claims on a violation of the federal constitution, see 28 U.S.C. § 2254(a), Sweney must show that the trial court's failure to give certain jury instructions violated some right which was guaranteed to him by the Fourteenth Amendment, *see Cupp,* 414 U.S. at 146. It is not sufficient to simply show that the court's omission in instructing the jury was

-24-

erroneous under state law.  Furthermore, "the burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). Thus, the habeas petitioner faces a substantial hurdle and must show "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant under the Fourteenth Amendment . . . [T]he question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial process that the resulting conviction violates due process." *Cupp*, 414 U.S. at 146-47

Fatal to Sweney's claim is that the jury instruction not to speculate regarding evidence that was not presented at trial was not erroneous as a matter of state law. Read in context, the charge did not improperly convey that the jurors were to ignore gaps in the prosecution's case, such as the surveillance videotape, but simply that they were not to go beyond the evidence in theorizing about the reasons for the gaps. *See, e.g., People v. Gomez*, 226 A.D.2d at 296, 642 N.Y.S.2d 215.  Because Sweney cannot demonstrate an error of state law, let alone an error of federal constitutional magnitude, habeas relief cannot issue on this claim.

## H.      Harsh and Excessive Sentence

On direct appeal, Petitioner requested that the Appellate Division exercise its discretionary factual review power to reduce his sentence on the basis that the trial court abused its discretion and imposed a harsh and excessive sentence. Such an attack does not implicate the constitutionality of a Petitioner's sentence. *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.

1992); *Castro v. Sullivan*, 662 F. Supp 745, 753 (S.D.N.Y. 1987). Where a petitioner's sentence of imprisonment falls within the limits of a valid statute, a constitutional issue is not presented. *See White*, 969 F.2d at 1383. ordinarily is not cruel and unusual punishment in the constitutional sense. In the present case, Sweney was properly sentenced as a second felony offender and received an indeterminate sentence of 3 ½ to 7 years on his robbery conviction, which was within the statutory range. Accordingly, the length of Sweney's sentence does not present a constitutional question amenable to federal habeas review.

V.      **Conclusion**

        For the reasons stated above, Jerry Sweney's Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the Petition is dismissed.  Because Sweney has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2).

        **IT IS SO ORDERED**.

                                                        /s/ Victor E. Bianchini

                                        _____
                                                VICTOR E. BIANCHINI
                                                United States Magistrate Judge

DATED:      April 11, 2011
            Buffalo, New York